

FILED
LODGED
ENTERED
RECEIVED

DEC 31 2014   RE

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                                    DEPUTY

SEA 068349 Summns Issued

**UNITED STATES DISTRICT COURT FOR THE**

**WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| MAY HUANG | |
| Plaintiff | |
| v. | **EMPLOYMENT DISCIMINATION COMPLAINT** |
| SEATTLE PUBLIC LIBRARY | C14 -1986 RAJ |
| Defendant | |

Name, address and phone number of Plaintiff

May Huang
11401 Roosevelt Way NE # 3 Seattle, WA 98125
206-331-5730

Name and address of Defendant

Seattle Public Library
1000 Fourth Ave. Seattle, WA 98104

This action is brought pursuant to Title VII of the Civil Rights Act of 1964 for employment discrimination. Jurisdiction is conferred on this court by 42 U.S.C. Section 2000e-5. Equitable and other relief is sought under 42 U.S.C. Section 2000ee-5(g).

The acts complained of in this suit concern:

Not promoted for 10 years, and other unfair treatments because of Plaintiff's speech and hearing impairments due to teenage cancer. Plaintiff also suffered from retaliations after complaining to Human Resource director in 2012 and filing complaint at Seattle Office of Civil Rights in 2013. Plaintiff's health was damaged because of the retaliations by the management of Ballard Library.

Defendant's conduct is discriminatory with respect to following:

-Not promoting plaintiff for the last 10 years since 2004
-Plaintiff was taking extra responsibility to work at Fremont Library as the only LAII during 2005-2010 (The managers and LAIV were constantly changing or absence.)
-accused plaintiff of not able to hear from patron and forced her to transfer to Ballard Library without accommodation and with more demands on physical work in 2011.
-Assistant manager was instructing plaintiff to speak louder, so others could hear and understand better. Right next day, the Regional manager accused  plaintiff of yelling at him in 2011.
- Not allow plaintiff to submit applications for committees and Mentor Programs, and other programs year after year.
-Not allowing plaintiff to transfer to another branch for a better recovery after Plaintiff was hospitalized in 2012.
-The managers of Ballard library were constantly targeting on finding faults of plaintiff. The management also intended to create conflict situations for plaintiff and co-workers by taking advantage of speech and hearing impairments of plaintiff.
-The management did not accommodate scheduling regular email time and talk time for communication as doctor recommended. Indeed, there was often no time to check email at work. Plaintiff had to do that in her own time to know what's going on at work.
-The Assistant manager often talked to plaintiff's co-workers, ignoring the plaintiff.
Plaintiff had suggested and offered to make off desk schedule for circulation desk. The assistant manager kept ignoring her. Not until January 2014, was off- desk schedule for circulation desk made by another LAII.
-Not allowing plaintiff to transfer to another branch for health accommodation recommended by doctors and Mental Health professional.
-Made a difficult time for plaintiff to call in sick as she was instructed and accused her of yelling on the phone. (I may sometimes yell unknowingly due to hearing disability.)
-A written reprimand was issued in May 2014 to plaintiff about yelling. (No other people ever accused plaintiff of yelling except the Regional manager and Assistant Manager of Ballard Library.)

The basic facts surrounding my claim of discrimination are:

Plaintiff is qualified for the LAIV position since she was hired twenty years ago.  Indeed she was performing that position at Fremont Library while the LAIV was absent during 2005 to 2011. She has applied for most of the open LAIV Positions since 2006. All the employees who have the same classification as her in 2004 to 2012, who she worked with, have all been promoted to LAIVs (including temporary LAIV) or higher positions. (They are all white and have no disabilities.)  In 2011, the Regional manager of Mid-West at Fremont Library accused her of not able to hear the patron calling for help behind her back and forced her to be transferred to Ballard branch library.

The Regional manager, Dave Valencia, has also demoted an Asian American female, over 40 years of age from Fremont library to Central Library in the end of 2012. Another Asian American female, over 40 was also demoted to Ballard Library as an LAIV and then transferred out to Rainier Beach Library. Plaintiff is a Asian American female, over 40 years of age as well.

Andrew (Andy) Bates, was plaintiff manager at Lake City Library in 2003-2004 and now the supervisor Librarian at Fremont Library since 2013. He has a history of discrimination against the plaintiff.
He discarded the goals plaintiff had written and showed to him about  SPL Hope and Dream. He ignored that Plaintiff was in the LAII pool for several years, and has just completed a temporary LAII assignment at Montlake Library successfully with the manager's approval in 2002. Mr. Bates refused to promote plaintiff and did not allow plaintiff to work at the Library Technical department after plaintiff was interviewed and selected by the department as a Librarian Technician II in about 2003.
All he thought plaintiff, a disabled Asian female, should do was shelving, shelving, shelving.  Plaintiff has done a great job of shelving. Yet, he refused to promote Plaintiff to LAII and refused to give good reference to other departments, even though she has done a great job and an excellent interview. Plaintiff recalled, "I would like to point out that Andy Bates was my branch manager at Lake City Library in 2003-2004 while I was a LAI. He wrote a "work plan" for me which requested me to shelve heavy book loads every day. I said I could do it but refused to sign it. I checked my personal file at HR on 2013. I found the "work plan" in my file was a made-up one. The last page which was blank on the signature area, had a note below saying I refused to sign it. Only this page was the original one. I was so surprised to see the other part of  "My work plan" which was indeed a good work plan but I never saw it until 2013.  I think Mr. Bates probably made it up by himself after I filed a charge with SOCR in 2004. Just let you know that I was discriminated against by Mr. Bates in 2003-2004, and he has put a false document (the work plan) in my personal file in Human Resources."

For the last three years, Plaintiff has applied for more than 15 positions.

For all the years, no matter how hard the plaintiff worked, and how good her interviews went. She was never selected because she is a person with disabilities, a person of color, and an Asian female.

Plaintiff has posted her poem on previous Human Resource director, Lin Schnell blog as she requested opinions about diversity.

Don't judge a book by its cover
Don't judge a person by his or her color
I am sure we all read about Helen Keller
If Helen Keller is a person of color
Would her story ever have appeared?

Don't let the color turn into fear

Don't let the fear turns into tears
If you can't see, you can hear
If you can't hear, you can feel
All we need is to share and be fair
Please be aware and take good care
--may j 4/7/11

| | |
|---|---|
| The alleged discrimination occurred on or about: | It occurred since around 1999. The most recent obvious one occurred in 2011, my Regional manager *accused me of not being able to hear* and forced me to work at Ballard Library with overload work and not enough staff which caused my health to be damaged in the long term.<br> I was in the LAII pool for many years while other people in the pool were all promoted, then they created a new pool to let new people in, and I was always  in the pool until the end of 2004. |
| I filed charges with the Federal Equal Employment Opportunity Commission (or Washington State Human Rights Commission) regarding defendant's alleged discriminatory conduct on or about: | I filed charges with the Seattle Office of Civil Rights on 5/9/2013. However, the director decided there was no discrimination in August 2013, even though there was discrimination findings. I then went to appeal. The Seattle Human Rights Commission has GRANTED my Appeal and the findings of Facts and Determination is REMANDED as of January 7, 2014. However, the SOCR has delayed the investigation for the whole year, and still not providing me the findings as of December 2014. During the investigation, I was retaliated against. I've asked SOCR for help but it failed to protect me, and as a result my health is further damaged. |
| The Equal Employment Opportunity Commission issued a Notice of Right to Sue letter (please attach copy), which was received by me on or about: | The Right to Sue letter was issued on 10/07/2014 by EEOC. I received it around 10/10/14. I haven't been able to work since July 21st, 2014 However, the Seattle Office of Civil Right did not provide me the findings.<br>Please see attached for the letter and email. |

WHEREFORE, Plaintiff prays that the Court grant the following relief:

Plaintiff has always wanted to get  promoted and contribute her skills and passion to serve the diverse patrons at Seattle Public library. However, her health has been damaged by mangers who have retaliated against her. She is no longer able to go back to work at Seattle Public Library.
For twenty years of hard work, she has not been able to earn a reasonable income because of unfair employment.

She would like to live with dignity and be respected for the rest of her life as she would be able to earn all the way up if the employment was fair. She would able to support her teenage son's college fund if she was promoted fairly years ago, and if her health was not affected by the management of Seattle Public Library from retaliations.

She prays the Court grant the following relief:

-Life long health insurance coverage including medical, dental, and vision for plaintiff and her teenager son till he turns 21.
-$250,000 for plaintiff to pay off her Condo mortgage, transportation, and other immediate cost. Plaintiff and her son can then live with her $1,800 /month disabilities insurance coverages for ten years without paying all to the mortgage.
-$500,000 to her retirement funds. So she could live with her pension after 10 years. If plaintiff pass away in a natural cause before the age of 61, she would donate half of the fund to Seattle Public Library Foundation, and the other half to her son.
-$200,000 college funds for her teenage son.
-Be an honor consultant for committees of Seattle Public Library or/and the Office of City Librarian.

DATED: 12/31/14

Signature of Plaintiff

Plaintiff's Name

May J. Huang

BEFORE THE SEATTLE HUMAN RIGHTS COMMISSION
APPEALS COMMITTEE

| | |
|---|---|
| MAY HUANG | ) |
|         Charging Party, | ) |
| | ) |
|     vs. | ) CASE NO. SOCR13CE002 |
| | ) FED NO. 38E-2013-000737C |
| SEATTLE PUBLIC LIBRARY, | ) |
| | ) |
|         Respondent. | ) |
| | ) ORDER REMANDING SOCR FINDINGS |
| | ) OF FACT AND DETERMINATION |
| | ) |
| | ) |
| | ) |
| | ) |

## I.    INTRODUCTION

Charging Party, May Huang, (Charging Party) alleges that Respondent, Seattle Public Library (Respondent), engaged in unfair employment practices with respect to failure to hire due to age, disability, national origin and race in violation of the Seattle Fair Employment Practices Ordinance, Seattle Municipal Code (SMC) Chapter 14.04, and Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), as amended and the Age Discrimination in Employment Act of 1967 (ADEA), as amended.

The Seattle Office of Civil Rights (SOCR) investigated and on September 20, 2013, issued its finding of no reasonable cause to believe an unfair practice had occurred.  On October 11, 2013, Charging Party timely appealed SOCR's Findings of Fact and Determination to the Commission.  Charging Party's appeal statement was sufficient because it identified specific errors or fully described evidence that should be considered under Seattle Homan Rights Rules 46-030(1).  The Commission Appeals Committee considered the appeal on November 25,

MAY HUANG
ORDER REMANDING SOCR FINDINGS OF FACT
AND DETERMINATION - 1

1 | 2013.

2 | **II.    FACTS**

3 |     Charging Party is female, Asian, and over the age of 40. She was born outside of the
4 | United States (in Taiwan) and is a person with a disability.  Since 2004 Charging Party was
5 | employed by Respondent as a Library Assistant II, primarily responsible for customer service at
6 | circulation desks.

7 |     In February 2013, a vacancy occurred in a Library Assistant IV position at Respondent's
8 | Ballard Library.  The Library Associate IV position is responsible for providing information
9 | services to Respondent's customers, providing advisory services, conducting community
10 | outreach services, preparing presentations, and providing circulation, technical, and
11 | administrative support. When needed, the LAIV is also responsible for the operation of the
12 | branch in the absence of a manager, which requires the interpretation of policies to users and the
13 | handling of emergencies.

14 |     The minimum qualifications for the LAIV position are a high school diploma or
15 | equivalent, experience using Library information resources in print and electronic formats, at
16 | least three years of direct customer service, the ability to prioritize and manage daily tasks,
17 | judgment in problem-solving and deductive reasoning, proficiency in Microsoft Word and Excel,
18 | project management skills, flexibility in work hours and the ability to work with others in a team
19 | environment.

20 |     Respondent advertised that it was advertising for the Library Assistant IV position at
21 | Ballard.  Because the Ballard position was being temporarily filled by the Fremont Library
22 | Assistant IV, Respondent also advertised that applicants would also be considered for a
23 | temporary Library Assistant IV at Fremont.

    On February 15, 2013, Charging Party applied for the Library Assistant IV position when

MAY HUANG
ORDER REMANDING SOCR FINDINGS OF FACT
AND DETERMINATION - 2

1   Respondent informed her that applicants would also be considered for a temporary Fremont

2   Library Assistant IV position. Charging Party wished to apply only to the Library Assistant IV

3   position in Fremont.

4         Charging Party possessed the minimum qualifications required for the Library Assistant

5   IV position.

6         In March 2013, Respondent's human resources forwarded 14 applications to its hiring

7   panel. Charging Party's application was included.  Respondent's hiring panel selected and

8   interviewed four candidates for the temporary Fremont LAIV position. Charging Party was not

9   chosen for an interview.

10        All four interviewees were internal candidates who, like Charging Party, held Library

11   Assistant II positions.  Of the four candidates interviewed, three were identified as Caucasian and

12   one was identified as Asian or Pacific Islander.  None of the interviewees was a person with a

13   disability, and all interviewees were born in the United States.  Of the four candidates

14   interviewed, three were under the age of 40, and one was over.

15        The candidate selected was identified as white, American, non-disabled, and in her 30s.

16   Charging Party believes Respondent failed to hire her because of her age, disability national

17   origin, and race.

18   **III.   ADEQUACY OF THE INVESTIGATION**

19        SOCR interviewed five witnesses, 1) Charging Party, 2) Dave Valencia, Respondent's

20   Regional manager, 3) Andy Bates, Supervising Librarian, 4) Dr. Jeffrey Rubinstein, DMD, MS,

21   and 4) Dr. Erin Lanning, Au. D.

22        Other than Charging Party herself, these witness interviews included only the two

23   individuals responsible for the hiring decisions, and two medical professionals who were

interviewed presumably regarding Charging Party's disability.

MAY HUANG
ORDER REMANDING SOCR FINDINGS OF FACT
AND DETERMINATION - 3

1    During the comment period of the investigation, Charging Party named five witnesses

2    who were fellow employees outside of Charging Party's protected classes, all of whom were

3    promoted.  More significantly, Charging Party identified two employees (Asian women) within

4    her protected class who were either demoted or transferred.   Charging Party alleges that this

5    shows a pattern of discrimination.

6    SOCR did not interview any of the additional witnesses identified by Charging Party.

7    Instead SOCR responded by stating "These individuals were not interviewed because they do not

8    have information that is relevant to the determination of whether Respondent failed to hire Ms.

9    Huang because of her age, race, national origin, or disability status."  Reply to Appeal letter, p. 2.

10   SOCR does not explain why it believes that these individuals have no relevant information.

11   To prevail Charging Party must first establish a prima facie case of discrimination.  If she

12   does, a presumption of discrimination is established and the evidentiary burden shifts to the

13   Respondent to produce admissible evidence of a legitimate, nondiscriminatory explanation for

14   the adverse employment action sufficient to raise a genuine issue of fact as to whether Charging

15   Party discriminated against the plaintiff.    Once this burden is met, the presumption of

16   discrimination is removed, and the burden of proof shifts back to the Charging Party, who must

17   then "be afforded a fair opportunity to show that Respondent's stated reason for the adverse

18   action was in fact pretext.  See, *Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 23 P.3d 440

19   (2001).  To prove pretext, Charging Party may present 1) evidence that the reason advanced by

20   Respondent is not believable, 2) evidence that similarly situated individuals outside Charging

21   Party's class were treated differently, 3) evidence of bias by Respondent's decision makers

22   towards other persons of Charging Party's class, or 4) statistical evidence showing

23   underemployment of members of CP's class.

To establish a prima facie case of discrimination based on the failure to hire, Charging Party must show that 1) she is a member of a protected class under the law, 2) she applied for a job for which she met the stated qualifications, 3) she was rejected, and 4) Respondent filled the job or continued to seek applicants with the same qualifications who are not members of Charging Party's protected class. Here, it is clear that the first three elements have been met.

The fact, if established, that Charging Party was as qualified as the person outside her protected classes that was hired would meet the fourth element, whether Respondent filled the job or continued to seek applicants with the same qualifications who are not members of Charging Party's protected class, and establish a prima facie case of discrimination. In addition, such evidence may rebut the legitimate reason proffered by Respondent for not promoting Charging Party, that she was not as qualified as the chosen applicant.

Interviews with fellow employees not within Charging Party's protected classes who were promoted may reveal information that Charging Party was just as qualified or that her performance was equal to or better than those who were promoted, including the person who was chosen in place of Charging Party. This would reveal whether the chosen applicant was indeed more qualified than Charging Party. This would be relevant, again, to the fourth prima facie element. Again, since Respondent has offered a legitimate non-discriminatory reason for its failure to promote Charging Party, such information is also relevant to whether such reasons are pretextual.

In addition, interviews with fellow employees within Charging Party's protected classes who were not promoted may reveal information that they were as qualified as and performed as well as those outside the class who were promoted. This is relevant to the question of whether the reason advanced by Respondent is not believable, whether similarly situated individuals outside Charging Party's class were treated differently, whether there was bias by Respondent's

decision makers towards other persons of Charging Party's class, and could constitute statistical evidence showing underemployment of members of CP's class.  Accordingly this would be relevant to the issue of whether Respondent's proffered reason for the adverse action was pretextual.

The Commission finds that the investigation was not adequate and requests SOCR to conduct interviews of the five fellow employees outside of Charging Party's protected classes, all of whom were promoted, and the two employees within her protected class who were either demoted or transferred, for the purpose of determining 1) whether Charging Party was as qualified or more qualified than the person selected, thus establishing a prima facie case, and 2) whether Respondent's reasons for not promoting Charging Party were pretextual.

## IV.   ORDER

The Committee therefore enters the following ORDER:

A. The Commission finds that the investigation was inadequate and requests SOCR to conduct a further investigation consistent herewith.

B. The Appeal is therefore GRANTED and the Findings of Fact and Determination is REMANDED.

January 7, 2014

|  | Concur | Dissent |
|---|---|---|
| *Greg Ramirez* | x | |
| Greg Ramirez, Commissioner | | |
| *Marsha Mavunkel* | x | |
| Marsha Mavunkel, Commissioner | | |

MAY HUANG
ORDER REMANDING SOCR FINDINGS OF FACT
AND DETERMINATION - 6

1

2

3

_____     _____x_____     _____
4  Alex Becker,
Commissioner

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

MAY HUANG
ORDER REMANDING SOCR FINDINGS OF FACT
AND DETERMINATION - 7

EEOC Form 161 (11/09)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | May J. Huang<br>11401 Roosevelt Way NE, #03<br>Seattle, WA 98125 | From: | Seattle Field Office<br>909 First Avenue<br>Suite 400<br>Seattle, WA 98104 |
|---|---|---|---|

☐    *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 38E-2014-00012 | Alexander P. Johns,<br>State & Local Coordinator | (206) 220-6855 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐    The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐    Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐    The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐    Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐    The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☒    The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐    Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Nancy Sienko*

October 7, 2014

Enclosures(s)

**Nancy A. Sienko,**
**Director**

*(Date Mailed)*

cc:

SEATTLE PUBLIC LIBRARY
Human Resources/EEO Manager
1000 FOURTH AVENUE
Seattle, WA 98104

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*